# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| KEVIN LOUDERMILK, | |
| Plaintiff, | No. 08 CV 6869 |
| v. | Judge Reinhard |
| | Magistrate Judge Mahoney |
| BEST PALLET COMPANY, LLC, and DAN LYONS, individually, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Kevin Loudermilk ("Loudermilk") by and through his attorneys, Caffarelli & Siegel Ltd., submits this Memorandum of Law in opposition to the Motion for Summary Judgment filed by Defendants Best Pallet Company, LLC ("Best Pallet" or "Company") and Dan Lyons ("Lyons"). Kevin Loudermilk, an African-American worker, claims that he was subject to race discrimination and retaliation during his employment with Best Pallet. The evidence shows a company, owned by the same Chicago law firm defending this action, which now has a majority-Hispanic workforce. As detailed below, numerous genuine issues of material fact preclude summary judgment, including but not limited to:

- Impartial witnesses and the Defendants' own documents show that Plaintiff was subjected to less favorable terms of employment than Hispanic employees at Best Pallet, including both work assignments and the assignment of overtime hours.

- Defendants' claim that Plaintiff did not engage in protected activity is preposterous, in light of his multiple verbal complaints of discrimination to management, culminating in a written complaint of discrimination, which specifically stated that the "Hispanic" employees were being treated more favorably, and that he was going to file a charge with the EEOC.

- Despite Defendants' arguments to the contrary, there is a plethora of evidence establishing the causal link between Plaintiff's protected activity and his termination, in addition to evidence that Defendants' stated rationale for terminating the Plaintiff at the time that they did is pretext and false.

- This evidence includes, but is not limited to: close temporal proximity, shifting rationales, inconsistent statements to the EEOC, evidence of fabricated post facto disciplinary documentation, failure to follow internal procedures, and bogus claims of a planned layoff, when the evidence adduced in discovery shows that the company was actually hiring new employees during the relevant time period.

## FACTS[1]

Defendant Best Pallet Company, LLC ("Best Pallet" or "Company") is located in Loves Park, Illinois, and is in the pallet industry. (SOAF ¶ 2.) In August 2005, the Company was bought by its current owners, Joseph Messer and Thomas Stilp, the defense attorneys in this matter. (SOAF ¶ 2.) Messer and Stilp own multiple companies, including Best Pallet, through their holding company, Messer & Stilp Holdings. (SOAF ¶ 2.) While each company is allegedly an independent entity, the companies have many shared employees, and regularly hold joint meetings at Messer & Stilp's office in Chicago, Illinois. (SOAF ¶ 2.)

Following the purchase of Best Pallet in August 2006, the Company's former owner, Bradley Huber, remained employed as its on-site floor manager. (SOAF ¶ 3.) Additionally, Defendant Dan Lyons was hired as the Vice President of Business Operations. (SOAF ¶ 4.) Both Lyons and Huber had the authority to terminate employees. (SOAF ¶¶ 3, 4.)

Plaintiff, Kevin Loudermilk, began working for Best Pallet on June 1, 2005, as a general laborer. (SOAF ¶ 1.) Loudermilk is African-American. (SOAF ¶1.) Loudermilk's direct supervisor during his employment was Juan Campos. (SOAF ¶5.) Campos is Hispanic. (SOAF ¶ 5.) Loudermilk was also supervised by Huber. (SOAF ¶ 3.) According to Huber, Loudermilk performance met Company standards. (SOAF ¶ 3.) Moreover, Huber never told Lyons or anyone else with Best Pallet that Loudermilk should be fired. (SOAF ¶ 3.)

During his employment Loudermilk was primarily assigned to work on the Company's tear-down machine. (SOAF ¶ 6.) Loudermilk was the only African-American employee working in his area. (SOAF ¶ 6.) The tear-down machine looks like a capital letter "T." (SOAF ¶ 7.) Normally, two employees work the two saws on the base of the "T," while three employees are supposed to work along the top of the "T." (SOAF ¶ 7.) The employee working the middle of the top of the "T" sorts the boards that are cut by the saws on the base of the "T." (SOAF ¶ 7.)

---

[1] References to Defendants' 56.1(a)(3) Statement of Material Facts are cited as "SOF ¶ __." References to Plaintiff's 56.1(b)(3) Statement of Material Facts are cited as "SOAF ¶ ___."

He will send the boards either to the right or to the left on the machine, and the employees on the two ends of the top of the "T" are required to stack the boards.  (SOAF ¶ 7.)  Additionally, Huber and Smythe testified that occasionally if one of the saws on the base of the "T" was not being used, then the Company may have only one employee cover both ends of the top of the "T."  (SOAF ¶ 8.)  However, one employee would not cover both ends of the top of the "T" if both saws were running.  (SOAF ¶ 8.)

The above notwithstanding, during Loudermilk's employment with the Company, Defendants regularly staffed the tear-down machine differently.  For example, Glen Jones, one of the employees that worked on the base of the "T" (SOAF ¶ 9), testified that Loudermilk primarily worked both ends of the top of the "T" by himself (SOAF ¶ 10.).  Moreover, contrary to Huber and Smythe's assertion, Jones testified that Loudermilk was required to cover both ends of the top of the "T," even when both saws were running.  (SOAF ¶ 10.)  Furthermore, Loudermilk testified that in addition to having to work both ends of the top of the "T" by himself, the tear-down machine was also frequently staffed with multiple Hispanic employees working on one end of the top of the "T," while he would be forced to work by himself on the other end.  (SOAF ¶ 11.)  Jones confirmed during his deposition that he observed this arrangement also.  (SOAF ¶ 11.)

Loudermilk also did not receive the same help during his employment that his Hispanic co-workers received.  (SOAF ¶ 12.)  Specifically, the Hispanic employees would assist each other throughout the day, but would not help Loudermilk.  (SOAF ¶ 12.)  Additionally, the Hispanic employees were allowed to shut down the machine in order to allow each other to catch up on stacking boards, but they would not shut down the machine for Loudermilk to catch up.  (SOAF ¶ 12.)  In fact, Jones testified that he was specifically told by Huber that he could not shut down the machine to allow Loudermilk to catch up.  (SOAF ¶ 12.)  Consequently, Loudermilk would fall behind in stacking the boards because he did not receive the same help as his Hispanic co-workers.  (SOAF ¶¶ 12, 13.)

As a result, Loudermilk was often disciplined while his Hispanic co-workers were not.  (SOAF ¶ 13.)  For example, Huber verbally disciplined him for allegedly allowing boards to fall.  (SOAF ¶ 13.)  Yet, as Jones testified, it would be impossible for anyone, not just Loudermilk, to keep up with stacking the boards because it was a two-person job that Loudermilk was being forced to do by himself.  (SOAF ¶ 13.)  According to Jones, the Hispanic employees did not fall

behind because they helped each other, while Loudermilk received no help during the day. (SOAF ¶¶ 12, 13.)

Additionally, in March 2006, Campos gave Loudermilk a written warning for allegedly refusing to do his job and for insulting his foreman, Aristeo Gutierrez. (SOAF ¶ 16.) Even though Loudermilk denied the allegations in the March 9, 2006 warning, the Company conducted no follow up investigation to confirm Campos's claims. (SOAF ¶ 16.) By failing to do so, Defendants did not follow their normal procedures when Campos wrote up Loudermilk. (SOAF ¶¶ 14, 16.) Furthermore, Huber testified during his deposition that the March 9, 2006 warning was false because Gutierrez was not Loudermilk's foreman. (SOAF ¶ 16.)

Campos also failed to follow the Company's normal procedures when he completed a disciplinary notice dated April 26, 2006 for Loudermilk's picture taking in the facility. (SOAF ¶¶ 14, 17.) Specifically, the picture taking incident occurred on April 25, 2006 (SOAF ¶ 17), and Campos is supposed to fill out the disciplinary notice the same day as the incident (SOAF ¶ 14). Howver, the disciplinary notice was not completed until April 26, 2006 (SOAF ¶ 17), the same day that Loudermilk was fired (SOAF ¶¶ 17, 25).

Loudermilk was also treated by Defendants differently than his non-African American co-workers because he was the only employee working on the tear-down machine that was not assigned any overtime. (SOAF ¶ 18.) Specifically, from January 2006 through April 2006, every other employee working the same job as Loudermilk worked at least some overtime hours. (SOAF ¶ 18.) Loudermilk received none. (SOAF ¶ 18.) Yet, he was also the only African American employee working that job. (SOAF ¶ 6.)

Loudermilk complained numerous times throughout his employment about race discrimination. (SOAF ¶¶ 19-25.) For example, in March 2006, Loudermilk complained to Huber about his Hispanic co-workers calling him derogatory names in Spanish. (SOAF ¶ 20.) Loudermilk believed that the derogatory names were being directed at him because of his race. (SOAF ¶ 20.) Following Loudermilk's complaint, Huber spoke with Campos. (SOAF ¶ 20.) Campos admitted during his deposition that the Hispanic co-workers called Loudermilk Spanish names such as "Negro" and "Prieto." (SOAF ¶ 20.) Moreover, according to Campos, who is fluent in Spanish, "Negro" means black and "Prieto" refers to someone who is dark skinned. (SOAF ¶ 20.)

Loudermilk also complained to Huber in March 2006 about the fact that he believed the Hispanic employees were being favored. (SOAF ¶ 21.) In particular, Loudermilk complained that he was being forced to work by himself, while the Hispanic employees had help. (SOAF ¶ 21.) Huber admitted during his deposition that he remembers Loudermilk making this complaint. (SOAF ¶ 21.) However, Huber did nothing to rectify the situation. (SOAF ¶ 21.)

Additionally, Loudermilk complained to Huber and Lyons about discrimination several times in April 2006. (SOAF ¶¶ 19, 22-25.) Specifically, he complained to them together during the first or second week of April 2006. (SOAF ¶ 22.) He also complained on April 24, 2006. (SOAF ¶ 22.)

Moreover, Loudermilk also complained to Lyons by himself in April 2006. (SOAF ¶¶ 19, 23-25.) Specifically, on April 25, 2006, Loudermilk complained to Lyons about being discriminated against. (SOAF ¶ 23.) Lyons responded by telling Loudermilk to put his complaint in writing. (SOAF ¶23.) Loudermilk complied with Lyons' request, and presented Lyons with a written complaint of discrimination the next day, April 26, 2006. (SOAF ¶¶ 23-25.) Loudermilk's written complaint explicitly stated that he felt "Juan Campos discriminated against [him]," "[Campos] has shown favoritism toward his Hispanic buddies," and that "if [he] has to [he] will take this complaint to the E.E.O.C." (SOAF ¶ 24.) Lyons immediately fired Loudermilk upon receiving Loudermilk's written complaint of discrimination. (SOAF ¶ 25.) Loudermilk was replaced by another laborer. (SOAF ¶ 32.)

Following his termination, Loudermilk filed a charge of discrimination against Best Pallet with the EEOC. (SOAF ¶ 27.) During the EEOC investigation, Lyons admitted to the EEOC that he received Loudermilk's written complaint of discrimination sometime the same week that he fired Loudermilk. (SOAF ¶ 28.) However, during his deposition, Lyons changed his testimony, claiming instead that he received the written complaint from Loudermilk sometime in March 2006. (SOAF ¶ 28.) The Company also admitted to the EEOC that it fired Loudermilk. (SOAF ¶ 29.) The Company did not tell the EEOC that Loudermilk was "laid off," or "resigned," even though it identified other employees as being laid off and/or resigning. (SOAF ¶ 28.)

Despite their previous testimony to the EEOC, Defendants now claim that the decision to end Loudermilk's employment was mutual, and that he was not fired. (SOAF ¶ 30.) According to Defendants, Loudermilk told Lyons that he no longer wanted to work for Best Pallet, and

Lyons agreed that Loudermilk's employment should end given his allegedly poor performance and the Company's alleged decision to downsize. (SOAF ¶30.) However, Loudermilk denies ever telling Lyons that he did not want to work for Best Pallet. (SOAF ¶ 30.) Additionally, Loudermilk was the only employee terminated on April 26, 2006. (SOAF ¶ 31.) According to the information the Company provided to the EEOC, the alleged downsizing did not commence until June 2006. (SOAF ¶ 34.) In fact, Best Pallet continued to hire new employees between March and May 2006, after the alleged decision to downsize had been made. (SOAF ¶¶ 32, 33.) The EEOC issued a rare "cause finding" in favor of Loudermilk at the conclusion of its investigation. (SOAF ¶ 34.) Loudermilk filed his Complaint within ninety (90) days after receiving his Right to Sue Letter from the EEOC. (SOAF ¶ 34.)

## ANALYSIS[2]

Motions for summary judgment should be viewed with special scrutiny in employment cases, which often turn on issues of intent and credibility. Bellaver v. Quanex Corp., 200 F.3d 485, 491 (7th Cir. 2000). See also Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1313 (7th Cir. 1989) (holding that courts should approach summary judgment with special caution as it is often an inappropriate method of resolving Title VII claims in which the defendant's intent is the central issue). The issue of discriminatory intent is often only subject to proof by circumstantial evidence, which makes summary judgment a seldom useful tool for resolving such issues. Friedel v. City of Madison, 832 F.2d 965, 972 (7th Cir. 1987).[3]

The Seventh Circuit has recognized time and again that at summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder." Paz v. Wauconda Healthcare and Rehabilitation Centre, 464 F.3d 659, 664 (7th Cir. 2006), quoting Payne v. Pauley, 337 F.3d 767, 779 (7th Cir. 2003). If factual disputes are apparent in the record, those disputes are sufficient to preclude summary judgment – even if the facts come from the plaintiff's own "self-serving" affidavit or deposition. Paz, 464 F.3d at 664-65; Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003).

---

[2] Copies of all unpublished decisions cited in Plaintiff's memorandum are attached as Group Ex. 1.

[3] Moreover, granting summary judgment in this case would violate the Seventh Amendment of the United States Constitution. The Seventh Amendment preserves the right to a jury trial in a civil case except under any then-existing rules of English common law. Fed. R. Civ. P. 56, which seemingly permits courts to reviewing evidence outside of or inconsistent with the Plaintiff's allegations, was not available under English common law at the time the Constitution was ratified, nor is it consistent with the core principles of English common law. See "Why Summary Judgment is Unconstitutional", Suja A. Thomas, 93 Virginia Law Review, Spring 2007 (available online at http://www.virginialawreview.org/content/pdfs/93/139.pdf).

In moving for summary judgment, the Defendants wrongfully draw all inferences in their favor, however, "in ruling on a motion for summary judgment, the admissible evidence presented by the <u>nonmoving</u> party must be believed and all reasonable inferences must be drawn in his favor." <u>Hunter v. Amin</u>, 583 F.3d 486, 489 (7th Cir. 2009) (emphasis added). Moreover, this memorandum does not differentiate between Loudermilk's Title VII and Section 1981 claims as they are evaluated under the same rubric. <u>Williams v. Waste Management of Illinois, Inc.</u>, 361 F.3d 1021, 1028 (7th Cir. 2004). For the reasons stated below, there are myriad factual disputes that preclude summary judgment on Loudermilk's discrimination and retaliation claims.

## I. Genuine Issues of Material Fact Preclude Summary Judgment on Loudermilk's Claims of Discrimination Regarding Job Assignments, Overtime, and Discipline[4]

Loudermilk asserts that his race was a factor in the manner in which the Company assigned him to jobs, issued overtime,[5] and disciplined employees. <u>Utomi v. Cook County</u>, No. 98 C 3722, 1999 WL 787480 at *3 (N.D. Ill., Sep. 24, 1999) (denying defendant-employer's motion to dismiss discrimination claim on the basis that inflexible schedules, denial of overtime, heavier work assignments may constitute adverse employment actions when considering the background of the case's circumstances). With regard to the job assignment, overtime, and disciplinary issues, summary judgment is inappropriate so long as there is a question of fact as to whether a protected category played any role whatsoever in the adverse action. <u>See</u> <u>Desert Palace v. Costa</u>, 539 U.S. 90 (2003). The Seventh Circuit has recognized that employers typically teach their supervisory employees not to put discriminatory beliefs into words, <u>see</u> <u>Troupe v. May Dept. Stores Co.</u>, 20 F.3d 734 (7th Cir. 1994); however, the record contains

---

[4] Defendants wrongfully state that Loudermilk attempts to state a claim for hostile work environment – he does not. However, evidence that he suffered from a hostile work environment or was called racially derogatory names contribute to his reasonable belief that he was being subjected to discrimination for purposes of the retaliation claim.

[5] Defendant fails to mention that Loudermilk also claims discrimination on the basis of assignment of overtime hours. Although this was not specifically outlined in the Complaint, it is consistent with his claims and the federal notice pleading standard. Moreover, Defendants are well aware of this claim because it was specifically articulated in response to written discovery. <u>See</u> Ex. Q to Pl.'s 56.1(b)(3) Statement of Facts. A plaintiff's reliance on new legal theories in a summary judgment brief, consistent with the facts alleged in his complaint, is permissible. "Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint." <u>Ridings v. Riverside Medical Center</u>, 537 F.3d 755, 764 (7th Cir. 2008) (citing <u>Albiero v. City of Kankakee</u>, 122 F.3d 417, 419 (7th Cir. 1997) (finding that a trial court may appropriately consider a theory raised for the first time in plaintiff's summary judgment brief); <u>see also</u> <u>Bartholet v. Reishauer A.G. (Zurich)</u>, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Complaints in a system of notice pleading initiate the litigation but recede into the background as the case progresses. Later documents, such as the pretrial order under Rule 16(e), refine the claims; briefs and memoranda supply the legal arguments that bridge the gap between facts and judgments."); <u>U.S. Plastic Lumber, Ltd. v. Strandex Corp.</u>, No. 02-C-211, 2003 WL 23144861, at *10 (W.D. Wis. Feb. 07, 2003).

ample circumstantial evidence supporting Loudermilk's claim. The Seventh Circuit has held that in the discrimination context, there should be "nothing novel about establishing [discrimination] through the use of circumstantial evidence, for . . . circumstantial evidence is not less probative than direct evidence, and, in some cases, is even more reliable." Hasham v. Cal. State Bd. of Equaliz., 200 F.3d 1035, 1045 (7th Cir. 2000).

The Defendants describe the familiar, burden-shifting method of proving discrimination articulated in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). However, the Defendants cite to, but materially disregard, the seminal Supreme Court opinion of Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 149 (2000), which held that a plaintiff's prima facie case, combined with sufficient evidence for a reasonable fact finder to reject the employer's explanation, is sufficient to sustain a finding of intentional discrimination. . The Seventh Circuit has exhibited "faithful adherence" to Reeves by allowing a jury to infer that unlawful discrimination was the true motivation of the employer when the sincerity of the employer's asserted reasons for the adverse action is cast into doubt. Gordon v. United Airlines, Inc., 246 F.3d 878, 893 (7th Cir. 2001). See also Bell v. E.P.A., 232 F.3d 546, 550 (7th Cir. 2000).

In order to establish a prima facie case of discrimination under the "direct" method, Plaintiff need only establish that the employer's decision had a discriminatory motivation by use of either direct evidence or a "mosaic" of circumstantial evidence tending to show a discriminatory basis for the adverse action. See Jordan v. City of Gary, 396 F.3d 825, 832 (7th Cir. 2005); Cerutti v. BASF Corp., 349 F.3d 1055, 1063 (7th Cir. 2003). Alternatively, under the "indirect" method, Plaintiff need only establish the existence of evidence showing that: (1) he is a member of a protected class, (2) he performed in accordance with his employer's legitimate expectations, (3) he was subjected to an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably. Ptasznik v. St. Joseph Hosp., 464 F.3d 691 (7th Cir. 2006) (citing McDonnell-Douglas Corp v. Green, 411 U.S. at 802). If the prima facie case is established, then the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse action. Id. If the employer actually articulates such a reason, the burden shifts back to the Plaintiff to show either (1) that the employer's stated reason is pretextual, or (2) evidence casting the employer's explanation into doubt. See Id.; Gordon 246 F.3d at 893; Bell, 232 F.3d at 550.

In this case, genuine issues of material fact preclude summary judgment under either or both methods. First, it is undisputed that the Plaintiff is a member of a protected class. (SOAF ¶ 1.) Defendants also admit that the Plaintiff was meeting the Company's reasonable expectations, as plainly admitted to under oath by the Company's own on-site floor manager and former owner, Bradley Huber. (SOAF ¶ 3.) The adverse actions consist of (1) assigning the Plaintiff alone to do jobs that required two people, (2) refusing to assign the Plaintiff available overtime hours, and (3) disciplining Plaintiff by issuing him written warnings for insubordination. (SOAF ¶¶ 10-13, 16, 18.) Such actions clearly constitute adverse actions for purposes of Title VII. E.g. Lewis v. City of Chicago, 392 F.3d 909, 711 (7th Cir. 2007) (failure to provide overtime may constitute an adverse action); Johnson v. Milwaukee Sch. of Engineering, 258 F. Supp 2d 896, 908 (E.D. Wis. 2003)(discriminatory work assignments may constitute an adverse employment action); Utomi, 1999 WL 787480, at *5 (inflexible schedules, denial of overtime, and heavier work assignments may constitute adverse actions). Finally, there is evidence that similarly situated employees were treated more favorably. For example, Hispanic employees were not typically assigned to perform a two-person job alone. (SOAF ¶ 10.) The Company's own records show that the Hispanic employees regularly received more coveted overtime hours than the Plaintiff. (SOAF ¶ 18.) And finally, Hispanic employees were disciplined less harshly than the Plaintiff. (SOAF ¶¶ 14-16.)

With the Plaintiff having established his prima facie of discrimination with regard to the adverse actions articulated herein, summary judgment must be denied because Defendant fails to meet its McDonnell Douglass burden of production. That is, Defendants simply deny certain elements of the prima facie case as opposed to articulating any legitimate business reason whatsoever justifying either (1) assigning the Plaintiff to perform a two-man job alone, (2) assigning him less overtime hours than the Hispanic employees, or (3) disciplining him more harshly than the Hispanic employees. Assuming arguendo that the Defendants have met their burden of production, there is sufficient evidence for a fact finder to conclude either that the stated rationale for the disparate treatment (whatever that rationale is) is pretext, or that there is sufficient reason to disbelieve the Defendants pursuant to the Reeves analysis, as explained in Section II below. At a minimum, the Defendant has not provided any explanation whatsoever as to why Mr. Loudermilk was offered less overtime than all of the Hispanic employees, and cannot do so now, after having filed its Motion for Summary Judgment. Johnson v. Cambridge Indus.,

Inc., 325 F.3d 892, 901 (7th Cir. 2003) (summary judgment is the "put up or shut up" moment in the life of a case). Defendants have failed to "put up" anything regarding overtime assignments.

**II.     Genuine Issues of Material Fact Preclude Summary Judgment on Loudermilk's Claims of Retaliatory Termination for Complaining about Race Discrimination**

Similar to discrimination claims, a plaintiff may establish retaliation using either the direct or indirect method. Magyar v. St. Joseph Reg'l Med. Center, 544 F.3d 766, 770 (7th Cir. 2008). To establish a prima facie case of retaliation under the direct method, a plaintiff may show that: (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. Culver v. Gorman & Co., 416 F.3d 530, 546 (7th Cir. 2005), citing Krause v. City of La Crosse, 246 F.3d 995, 1000 (7th Cir. 2001). Under the indirect method, a plaintiff must show that he (1) engaged in a statutorily protected expression; (2) he was meeting the employer's legitimate expectations at work; (3) he suffered an adverse action; and (4) he was treated less favorably than similarly situated employees who did not engage in protected activity. Hegwood v. Canadian Pacific Railway, No. 07 C 5840, 2009 WL 928929, at *11 (N.D. Ill Apr. 3, 2009). Moreover, if the employer presents evidence of a legitimate business reason for the adverse action, the plaintiff must also show that that reason is pretext for unlawful retaliation. Sitar v. Ind. Dept. of Trans., 344 F.3d 720, 728 (7th Cir. 2003). Alternatively, a Plaintiff may simply cast doubt upon the employer's stated rationale for terminating the Plaintiff:

> [W]hen the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a factfinder may reasonably infer that unlawful discrimination was the true motivation: 'If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one . . . may rationally be drawn.' In such circumstances, summary judgment is improper.

Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir. 1998), citing, Testerman v. EDS Technical Prods. Corp., 89 F.3d 297, 301 (7th Cir. 1996) (quoting Shager v. Upjohn Co., 913 F.2d 398, 401 (7th Cir. 1990)). See also Gordon 246 F.3d at 893; Bell, 232 F.3d at 550.

As to the issue of both direct evidence and pretext, evidence of retaliatory motive can consist of any number of things, including but not limited to: suspicious timing, ambiguous statements, inconsistent justifications, deviation of policy and practice, and evidence similarly situated employees were treated differently. See e.g., Gorence v. Eagle Food Centers, Inc., 242

F.3d 759, 762 (7th Cir. 2001); Emmel v. Coca Cola Bottling Co., 95 F.3d 627, 634 (7th Cir. 1996).  Mr. Loudermilk can show all five of those elements here, in addition to others. Moreover, the Seventh Circuit has also established that "a plaintiff can also prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence . . . ." Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004) (internal citations and quotes omitted).  According to this reasoning, a direct case of discrimination can be made by "assembling a number of pieces of evidence none meaningful in itself …. when taken as a whole, provide support if all point in the same direction."  Sylvester v. SOS Children's Villages Ill., Inc., 453 F.3d 900, 903 (7th Cir. 2006).  The McDonnell-Douglass burden-shifting analysis is thus, according to the Seventh Circuit, an unnecessary hurdle when such a combination of evidence of discrimination exists against a defendant.  Paz, 464 F.3d at 666.[6]

Finally, retaliation claims can, and often do, survive regardless of what happens to the underlying discrimination claim.  That is because a plaintiff need merely establish that he "reasonably believed" that he was being subject to discrimination, not that the discrimination actually existed.  Corbett v. CYTYC Corp., No. 07 C 4768, 2008 WL 4855073, at *6 (N.D. Ill. Nov. 7, 2008).  Here, whether or not Loudermilk was actually given worse job assignments, less overtime, and disciplined differently for discriminatory reasons, a factfinder can easily conclude that he reasonably believed that he was.  See Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir.2002) ("a plaintiff need not prevail on [his] Title VII discrimination claim or have opposed an action that in fact violated Title VII to win a retaliation claim").  In order to engage in protected conduct, Loudermilk only has to show that he "reasonably believed in good faith the practice [he] opposed violated Title VII."  Id.  In addition to the above, although it does not form part of the underlying discrimination claim, there is evidence that Loudermilk believed that the Hispanic employees were harassing him based upon his race.  (SOAF ¶ 20.)  They mocked him and used derogatory language, calling him "negro," which is a direct reference to his race that can be understood both in Spanish and in English.  Id.

_____

[6] Significantly, the Seventh Circuit has recently reversed a number of rulings granting summary judgment to defendants based on the fact that circumstantial evidence is a well-accepted method for proving discrimination. See e.g., Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006) (holding that the plaintiff had provided enough circumstantial evidence of discrimination); Sylvester, 453 F.3d 900 (holding that circumstantial evidence of retaliation warranted reversing summary judgment, even though the underlying sexual harassment claim did not survive).  Consistent with its recent decisions taking a more skeptical view of summary judgment in Title VII cases, the Seventh Circuit has made clear that the circumstantial evidence need only be enough for a reasonable jury to infer a retaliatory motive, and that the evidence need not even have a "rich, mosaic-like character."  Sylvester, 453 F.3d at 904.  Notwithstanding the above, the Plaintiff can establish retaliation under either method.

**a.      Sufficient Evidence of Retaliation Exists Under the Direct Method**

As to the first prong, evidence clearly shows that Loudermilk engaged in a protected activity.  He complained to Huber in March of 2006 that he was being subjected to "race discrimination."  (SOAF ¶¶ 19-21.)  In April, he made the same complaints to both Huber and Lyons.  (SOAF ¶¶ 19, 22-25.)  On April 25, he made another verbal complaint to Lyons, specifically stating that he was being subjected to race discrimination.  (SOAF ¶ 23)  And finally, when Lyons asked him to put it in writing, Loudermilk submitted a written complaint to Lyons specifically stating that the "Hispanic" employees were being treated more favorably, and that he was going to file a complaint with the EEOC.  (SOAF ¶¶ 23-25.)  It is well established that threatening to file a complaint with the EEOC is protected activity under Title VII.  See e.g., Chism v. Kenall Mfg. Co., No. 06 C 3374, 2008 WL 506115, at *13 (N.D. Ill. Feb. 15, 2008).  Moreover, contrary to Defendants' assertion (Defs.' mem. at 6), Lyons admits to reading Loudermilk's written complaint when he received it.  (SOAF ¶ 25.)

As to the second prong, evidence clearly shows that Loudermilk was terminated.  (SOAF ¶¶ 25, 29.)  Although Defendants subsequently have changed their story to claim that the termination was a "mutual" decision, they told the EEOC that Loudermilk had been terminated, with no such qualifier.  (SOAF ¶ 29, 30.).  Loudermilk will testify that Lyons told him that he was being "fired."  (SOAF ¶¶ 25, 30.)

As to the third prong, evidence shows the causal link between Loudermilk's complaints and his termination, and mosaic of evidence paints a picture of retaliation.  First, there is the extremely close temporal proximity between the protected activity and the termination.  Loudermilk was fired almost immediately after giving his written complaint that he was going to the EEOC to Lyons.  (SOAF ¶¶ 23-25.)  "The causal link of a retaliation claim is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action."  Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781 (7th Cir. 2007).   Even though there is much more evidence in this case, the Seventh Circuit has held that the immediate termination of an employee upon receipt by the Company of an EEOC complaint alone has been sufficient to preclude summary judgment.  Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 850 (7th Cir. 2007).

Second, evidence shows that the company's stated rationale of layoffs is bogus, in that the Company continued to hire employees after they supposedly were laying people off.  (SOAF

¶¶ 32-34.)  Third, Loudermilk was the only employee terminated on that particular day (SOAF ¶ 31), which casts doubt on the Company's explanation that it was due to some type of structured or mass layoff.  The Company has failed to provide any rationale to explain why if this was truly a preplanned layoff it decided to terminate Loudermilk on that <u>particular</u> day at that <u>particular</u> time, immediately after receiving his written complaint of discrimination.  Similar facts precluded summary judgment in <u>Maygar v. St. Joseph Reg. Med. Center</u>, 544 F.3d 766, 774 (7th Cir. 2008).  In <u>Maygar</u>, 544 F.3d at 774 (emphasis added), the fact that there was a job restructuring taking place at the time the plaintiff was terminated did not explain why the plaintiff was terminated on that particular day – "it merely shows that [it] might have occurred anyway at some point," and a trier of fact could conclude that the explanation of the <u>timing</u> of the action is but a <u>post hoc</u> justification of the decision to terminate the plaintiff.  Here, the Company claims that Loudermilk was the first person to be laid off as part of the structured layoffs, without providing any explanation as to why he was selected first.  (SOAF ¶ 31.)  In a contradiction, however, the Company also told the EEOC that the layoffs did not start until June of 2006, <u>months</u> after Loudermilk was terminated, and the only other people they identified as having been part of this bogus "layoff" were not terminated until <u>months</u> later.  (SOAF ¶ 34.)

Fourth, the Company's explanation of the termination has constantly shifted, from claiming that he was fired (SOAF ¶ 29), to claiming that he quit and it was a "mutual decision" (SOAF ¶ 30), to even if he was fired, there was a legitimate business reason, Defs.' mem. at 5.  This constantly shifting rationale <u>alone</u> precludes summary judgment.  <u>E.g.</u>, <u>Reeves</u>, 530 U.S. at 149; <u>Gordon</u> 246 F.3d at 893; <u>Bell</u>, 232 F.3d at 550; <u>Schuster v. Lucent Techs., Inc.</u>, 327 F.3d 569, 577 (7th Cir. 2001) ("[s]hifting and inconsistent explanations can provide a basis for a finding of pretext").  Fifth, there is also evidence of inconsistent testimony by Lyons to the EEOC, calling into question his truthfulness generally.  (SOAF ¶¶ 28-30.)  Sixth, the Defendant issued discipline regarding taking photos <u>after</u> the Plaintiff was terminated in an <u>ex post facto</u> attempt to justify the termination.  (SOAF ¶ 17.)  Finally, there is evidence discipline was not equally administered based upon race, in that Hispanic employees were not terminated for fighting even though Campos described fighting as a terminable offense.  (SOAF ¶¶ 14-15.).

      **b.**      **Sufficient Evidence of Retaliation Exists Under the Indirect Method**

Evidence also establishes that Loudermilk is able to state a claim of retaliation under the indirect method.  First, as described above, he engaged in a protected activity and suffered an

adverse employment action.  As to his performance, Company management <u>admits</u> that Loudermilk was meeting the employer's work expectations.  (SOAF ¶ 3.)  And as for being treated less favorably than other employees, he was the <u>only</u> person terminated on the day that he was terminated – the same day that he gave Lyons his written complaint of discrimination – despite the Company's stated claim that it intended to lay off multiple employees as part of a layoff.  (SOAF ¶¶ 23-25, 31-32)  It is undisputed that no other employee was terminated that day, and the Company has failed to provide any explanation whatsoever as to why Loudermilk was terminated on that particular day.  (SOAF ¶ 31.)  In fact, the layoff rationale is clearly shows that Loudermilk was treated differently as the Company told the EEOC that the layoffs did not start until June of 2006 – months after Loudermilk had been terminated (SOAF ¶ 34).  Assuming for the sake of argument that the Company has shown that Loudermilk actually was part of the layoff, the fact that the termination was accelerated shows that he was treated differently than the other employees and establishes liability, although a fact finder may rely upon the fact of the eventual layoff to limit damages.  In any case, summary judgment on liability is improper.

      **c.**    **Defendants' Stated Reasons for Terminating the Plaintiff's Employment are Pretextual and Not Credible, Precluding Summary Judgment**

For all of the reasons articulated above in Section II(a) of this Memorandum, Defendants' stated reason for terminating the Plaintiff's employment is pretext and not credible, precluding summary judgment.  As explained above in greater detail, this evidence of pretext includes the timing of the termination (immediately upon receiving a written complaint of discrimination) (SOAF ¶¶ 25, 28), changing rationales and testimony (SOAF ¶¶ 28-30), claiming that there was a structured layoff while at the same time continuing to hire new, permanent employees (SOAF ¶ 32, 33), claiming that Loudermilk was part of the structured layoff while at the same time telling the EEOC that the layoffs did not start until June of 2006 – months after Loudermilk had been terminated (SOAF ¶ 34), replacing Loudermilk with another laborer (SOAF ¶ 32), issuing an ex post facto disciplinary notice (SOAF ¶¶ 14, 17), and disciplining Loudermilk more harshly than his Hispanic co-workers (SOAF ¶¶ 14, 16).

**III.**    **Defendants Have Misrepresented the Facts and Rely on Red Herrings**

Rather than drawing all inferences in a light most favorable to the Plaintiff, as required under Fed. R. Civ. P. 56, Defendants have done the opposite – in both their fact statement and memorandum of law they draw all inferences in their own favor.  The most egregious examples of this are: (1) Defendants' ignore Loudermilk's repeated deposition testimony about

complaining to Huber and Lyons on multiple occasions about what he perceived to be race discrimination, and they ignore Loudermilk's testimony about the events of April 26, 2006 – the day he was fired by Lyons. In fact, the statements contained in Defendants' fact statement 39 in an of themselves show a genuine issue of material fact, yet they still included it in their 56(a)(1) Statement of Facts, and credit Lyons' recollection of events. (SOF ¶ 39.)

In addition, Defendants throughout their fact statement and in their memorandum of law make improper ipse dixit assertions. Ipse dixit is also known as the "bare assertion fallacy," an assertion that something is true merely because the speaker says that it is true. The most glaring ipse dixit assertion is fact statement 33, which asserts that "[n]obody at Best was prejudiced and discrimination wasn't tolerated," and cites to self-serving deposition testimony. (SOF ¶ 33.) Under Defendants' logic, an employer could easily defeat any discrimination claim by simply asserting that the employer does not discriminate. Likewise, under Defendants' logic a criminal could avoid going to prison by simply asserting that he did not commit the crime. This Court must not be fooled by Defendants' transparent attempts to turn legal issues into established facts.

## CONCLUSION

For the reasons articulated in this Memorandum, Plaintiff respectfully requests that this Honorable Court deny the Defendants' motion for summary judgment and award Plaintiff the fees and costs of having to respond for having filed such a motion despite being in possession of evidence clearly showing the existence of material facts, as outlined more fully in this Memorandum of Law. Goka v. Bobbitt, 862 F.2d 646, 650-51 (7th Cir. 1988.) (awarding sanctions to Plaintiff based upon Defendant's failure to cite genuine issues of material fact).

Dated: January 21, 2010                    Respectfully submitted,

Alejandro Caffarelli, #06239078
Bradley Manewith, #06280535              KEVIN LOUDERMILK
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 North Stetson Ste. 3150
Chicago, IL  60601                       By: /s/ Alejandro Caffarelli
Tel. (312) 540-1230                         Attorney for Plaintiff
Fax (312) 540-1231

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused a copy of the attached, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, to be served upon the parties below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on January 21, 2010.

Joseph S. Messer
Nicole M. Johnson
Messer & Stilp Ltd.
166 W. Washington St., Suite 300
Chicago, Illinois 60602

Courtesy copies delivered to chambers of Judge Reinhard via Federal Express.

/s/ Alejandro Caffarelli
Alejandro Caffarelli
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Suite 3150
Chicago, IL 60601